## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STATE OF FLORIDA;
STATE OF ALABAMA;
STATE OF ALASKA;
STATE OF ARIZONA;
STATE OF ARKANSAS;
STATE OF GEORGIA;
STATE OF IDAHO;
STATE OF INDIANA;
STATE OF KANSAS;
STATE OF KENTUCKY;
STATE OF LOUISIANA;
STATE OF MISSISSIPPI;
STATE OF MISSOURI;
STATE OF MONTANA;
STATE OF NEBRASKA;
STATE OF OHIO;
STATE OF OKLAHOMA;
STATE OF SOUTH CAROLINA;
STATE OF UTAH;
STATE OF VIRGINIA;
STATE OF WEST VIRGINIA,

     *Plaintiffs*,

     v.                         Case No. 22-718

ROCHELLE P. WALENSKY,
Director of the Centers for Disease
Control and Prevention, in her
official capacity; CENTERS FOR
DISEASE CONTROL AND
PREVENTION; SHERRI A.
BERGER, Chief of Staff of the
Centers for Disease Control and
Prevention, in her official capacity;
XAVIER BECERRA, Secretary of
the Department of Health and
Human Services, in his official
capacity; HEALTH AND HUMAN

SERVICES; DAVID P. PEKOSKE,
Administrator of the Transportation
Security Administration, in his
official capacity;
TRANSPORTATION SECURITY
ADMINISTRATION;
ALEJANDRO MAYORKAS,
Secretary of the Department of
Homeland Security, in his official
capacity; DEPARTMENT OF
HOMELAND SECURITY; the
UNITED STATES OF AMERICA,

      *Defendants.*
_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    Since the COVID-19 pandemic began, the Centers for Disease Control and Prevention (CDC) has made "unprecedented assertion[s] of power." *Florida v. Becerra*, 544 F. Supp. 3d 1241, 1270 (M.D. Fla. 2021) (Merryday, J.). It has done so principally under 42 U.S.C. § 264, a statute authorizing traditional quarantine measures "directly relate[d] to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *Alabama Ass'n of Realtors v. HHS* (*Alabama Association of Realtors II*), 141 S. Ct. 2485, 2488 (2021).

2.    The CDC has relied on this statute, for example, to prohibit evictions nationwide, to shut down the nation's cruise industry for over a year, and to impose economy-wide mask requirements—including for toddlers as young as two—at transportation hubs and while traveling on non-private conveyances, which include aircrafts, trains, road vehicles, and ships.

3.    "When an agency claims to discover in a long-extant statute an unheralded power to regulate a significant portion of the American economy, [courts] typically greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (quotations omitted). For that reason, the government has been largely unsuccessful in defending its reading of § 264. *See Alabama Ass'n of Realtors II*, 141 S. Ct. at 2485 (invalidating the eviction moratorium); *Becerra*, 544 F. Supp. 3d at 1241 (preliminarily enjoining the CDC's cruise industry restrictions).

4.    Even after facing loss after loss in federal court, however, the Biden Administration has displayed a remarkable level of intransigence.

5.    For example, the CDC renewed the eviction moratorium after five justices of the Supreme Court signaled it was unlawful and after the President stated publicly that it would not be renewed in light of the Supreme Court's decision. *See Alabama Ass'n of Realtors v. HHS* (*Alabama Association of Realtors I*), 141 S. Ct. 2320 (2021); *Alabama Ass'n of Realtors v. HHS*, No. 20-cv-3377, 2021 WL 3577367, at *2 (D.D.C. Aug. 13, 2021).

6.    Similarly, the CDC for months continued to apply its cruise industry restrictions outside of Florida even after a court in this division preliminarily enjoined them within Florida and even after *Alabama Association of Realtors II* left the CDC with no plausible defense of them. The CDC instead took three extensions—totaling 181 days—of the briefing deadline in its appeal and then dismissed that appeal once the restrictions expired. The only plausible inference from the CDC's behavior is that the

agency hoped to enforce its plainly unlawful actions for as long as possible while evading judicial review.

7.    The CDC's mask mandate, Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs, 86 Fed. Reg. 8,025 (Feb. 3, 2021), tracks a similar pattern. It has been seven months since the Supreme Court's decision in *Alabama Association of Realtors II* made clear that the CDC cannot issue economy-wide mask mandates. More recently, even lockdown States like California have announced the end of their mask mandates. Still, the CDC unabashedly leaves its mandate intact.

8.    Faced with a government that displays outright disdain for the limits on its power—especially when it comes to the COVID-19 pandemic—Plaintiffs seek vacatur of that mask mandate and a permanent injunction against its enforcement.

## PARTIES

9.    Plaintiff the State of Florida is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Florida is regulated by the mask mandate, for example, through its state-owned airports. And the mandate interferes with § 1002.20(3)(n)1.a., Fla. Stat., which prohibits public schools from "[r]equir[ing] a student to wear a face mask," including while traveling on school conveyances.

10.    Plaintiff the State of Alabama is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its

citizens. Alabama is regulated by the mask mandate, for example, through airports owned by its political subdivisions.

11.    Plaintiff the State of Alaska is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Alaska is regulated by the mask mandate, for example, through its state-owned airports. Alaskans are disproportionately harmed by the mandate because they rely on aviation to meet basic necessities. Approximately 82% of Alaska's communities depend on aviation for year-round access. And it takes around 42 hours to drive from Anchorage to the closest communities in the lower 48 States.

12.    Plaintiff the State of Arizona is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Arizona is regulated by the mask mandate, for example, through its state-owned airport.

13.    Plaintiff the State of Arkansas is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Arkansas is regulated by the mask mandate, for example, through airports owned by its political subdivisions. And the mandate interferes with Ark. Code Ann. § 20-7-142, which prohibits the State or its political subdivisions from requiring masks.[1]

14.    Plaintiff the State of Georgia is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its

---

[1] Arkansas is litigating a challenge to this statute, which is currently enjoined.

citizens. Georgia is regulated by the mask mandate, for example, through its Atlanta-Region Transit Link Authority, which operates the Xpress bus system.

15.     Plaintiff the State of Idaho is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Idaho is regulated by the mask mandate, for example, through its state-owned airports.

16.     Plaintiff the State of Indiana is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Indiana is required to monitor compliance with the mandate due to its administration of pass-through grants from the Federal Transit Administration (FTA). The FTA provides federal funding to the Indiana Department of Transportation which, in turn, provides it to eligible rural transit systems in Indiana for operations assistance and purchasing vehicles under 49 U.S.C. §§ 5311, 5339. As a condition of receiving these federal funds, Indiana is required to oversee subrecipients of the funds and certify compliance with all federal rules, including the mask mandate.

17.     Plaintiff the State of Kansas is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Kansas is regulated by the mask mandate, for example, through airports owned by its political subdivisions.

18.     Plaintiff the State of Kentucky is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Kentucky is regulated by the mask mandate, for example, through airports owned by its political subdivisions. The Kentucky Legislature is currently considering

legislation that would ban mask mandates in schools. If enacted, the mandate could interfere with that legislation.

19.   Plaintiff the State of Louisiana is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Louisiana is regulated by the mask mandate, for example, through ferries run by the Louisiana Department of Transportation and Development.

20.   Plaintiff the State of Mississippi is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Mississippi is regulated by the mask mandate, for example, through airports owned by its political subdivisions.

21.   Plaintiff the State of Missouri is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Missouri is regulated by the mask mandate, for example, through its state-owned airports. And the mandate interferes with Mo. Rev. Stat. § 67.265.1, which limits public health restrictions issued by political subdivisions "in response to an actual or perceived threat to public health for the purpose of preventing the spread of a contagious disease."

22.   Plaintiff the State of Montana is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Montana is regulated by the mask mandate, for example, through its state-owned airports.

23.    Plaintiff the State of Nebraska is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Nebraska is regulated by the mask mandate, for example, through its state-owned airports.

24.    Plaintiff the State of Ohio is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Ohio is regulated by the mask mandate, for example, through its state-owned airports.

25.    Plaintiff the State of Oklahoma is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Oklahoma is regulated by the mask mandate, for example, through airports owned by its political subdivisions. And the mandate interferes with Okla. Stat. tit. 70, § 1210.190, which restricts the issuance of mask mandates by public schools in the State.

26.    Plaintiff the State of South Carolina is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. South Carolina is regulated by the mask mandate, for example, through airports owned by its political subdivisions.

27.    Plaintiff the State of Utah is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Utah is regulated by the mask mandate, for example, through its state-owned airport. And the mandate interferes with Utah Code § 53G-9-210(5), which prohibits public

schools from "requir[ing] an individual to wear a face covering," including while traveling on school conveyances.

28.    Plaintiff the State of Virginia is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. Virginia is regulated by the mask mandate, for example, through its state-owned airports.

29.    Plaintiff the State of West Virginia is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. West Virginia is regulated by the mask mandate, for example, through airports owned by its political subdivisions.

30.    Defendants are the United States, appointed officials of the United States government, and United States governmental agencies responsible for the challenged mandate.

31.    Florida sues Defendant the United States of America under 5 U.S.C. §§ 702–703 and 28 U.S.C. § 1346.

32.    Defendant Sherri A. Berger is the Chief of Staff of the CDC. She issued the mask mandate.

33.    Defendant CDC is the government entity responsible for the mask mandate.

34.    Defendant Rochelle P. Walensky is Director of the CDC.

35.    Defendant Health and Human Services (HHS) is the agency that oversees the CDC.

36.    Defendant Xavier Becerra is Secretary of HHS.

37.    Defendant Transportation Security Administration (TSA) is enforcing the mask mandate.

38.    Defendant David P. Pekoske is Director of TSA.

39.    Defendant Department of Homeland Security (DHS) is the agency that oversees TSA.

40.    Defendant Alejandro Mayorkas is Secretary of DHS.

## JURISDICTION AND VENUE

41.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, 1361 and 5 U.S.C. §§ 702–703.

42.    The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. § 706, 28 U.S.C. §§ 1361, 2201–2202, the Constitution, and the Court's equitable powers.

43.    Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(1) because Plaintiff the State of Florida is a resident of every judicial district in its sovereign territory, including this district (and division). *See California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018).[2] Further, because this district is a major transportation hub, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred

---

[2] *Accord Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1329 (N.D. Ala. 2005); *see also Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892) (explaining that "the state government . . . resides at every point within the boundaries of the state").

here. There are also two related cases that are pending or were pending in this division.[3]

## FACTUAL BACKGROUND

<u>The CDC's Quarantine Authority and the COVID-19 Pandemic</u>

44.     Under 42 U.S.C. § 264(a), the CDC "is authorized to make and enforce such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases" into the United States or across state lines. The second sentence of § 264(a) clarifies that, "[f]or purposes of carrying out and enforcing such regulations, the [CDC] may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in [its] judgment may be necessary."

45.     Historically, the authority conferred by the first sentence of § 264(a) was read in light of the specific measures authorized by the second sentence, and the government used this power for "discrete action[s]," such as "bann[ing] a discrete item," "detain[ing]" a ship, or taking other similar measures "distinctly limited in time, scope, and subject matter." *Becerra*, 544 F. Supp. 3d at 1264.

---

[3] *Florida v. Becerra*, 8:21-cv-839 (Merryday, J.), is related because there is substantial overlap in the parties and issues. Three grounds for the preliminary injunction entered in *Becerra*—lack of statutory authority under 42 U.S.C. § 264(a), failure to conduct notice and comment, and failure to comply with 42 C.F.R. § 70.2—are presented here on substantially similar facts. Further, Florida and several of the Defendants—in the context of a motion to enforce the injunction—litigated the interaction between the mandate challenged here and the Conditional Sailing Order. *See Becerra*, Dkt. 114. *Health Freedom Defense Fund v. Biden*, 8:21-cv-1693 (Mizelle, J.), is related because the plaintiffs in that case challenge the same government policy.

46.     During the COVID-19 pandemic, however, the CDC began asserting a broader interpretation of § 264(a), which reads the first sentence of that provision in isolation to allow the CDC to impose "any measure" that it believes is "necess[ary]" to "reduce . . . the risk of transmission of a disease." *Id.* at 1280.

47.     In March 2020, for example, the CDC invoked § 264(a) to shut down the nation's cruise industry. *See* No Sail Order and Suspension of Further Embarkation, 85 Fed. Reg. 16,628 (Mar. 24, 2020). The CDC renewed the No Sail Order several times. It then issued the Conditional Sailing Order which, effective October 30, 2020, allowed the resumption of sailing only if the industry complied with severe restrictions. *See* Framework for Conditional Sailing and Initial Phase COVID-19 Testing Requirements for Protection of Crew, 85 Fed. Reg. 70,153 (Nov. 4, 2020).

48.     On September 4, 2020, the CDC invoked § 264(a) to prohibit evictions nationwide. *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292 (Sept. 4, 2020). The CDC extended the eviction moratorium several times.

49.     On June 18, 2021, a court in this division preliminary enjoined the CDC's Conditional Sailing Order. *Becerra*, 544 F. Supp. 3d at 1241.

50.     On August 26, 2021, the Supreme Court invalidated the CDC's eviction moratorium, which the Biden Administration surprisingly renewed after five justices of the Supreme Court signaled it was unlawful and after the President acknowledged that the Supreme Court's decision foreclosed the CDC from doing so. *Alabama Ass'n of Realtors I*, 141 S. Ct. at 2320; *Alabama Ass'n of Realtors*, 2021 WL 3577367, at *2.

11

51.     The Court expressly rejected the CDC's reading of § 264(a). It held that "the second sentence informs the grant of authority by illustrating the kinds of measures that could be necessary" and that measures must "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *Alabama Ass'n of Realtors II*, 141 S. Ct. at 2488.

52.     The Court also held that, "[e]ven if the text were ambiguous, the sheer scope of the CDC's claimed authority . . . would counsel against [its] interpretation." *Id.* at 2489. The Court relied on the interpretive principle that Congress speaks clearly when "authorizing an agency to exercise powers of vast economic and political significance" and when "it wishes to significantly alter the balance between federal and state power." *Id.* (quotations omitted).

<u>The Challenged Mask Mandate</u>

53.     On February 1, 2021, the CDC issued the mask mandate. *See* 86 Fed. Reg. at 8,025.

54.     The mandate requires any person "traveling on conveyances into and within the United States" to wear a mask, and it requires masks at "transportation hubs." *Id.* at 8,026.

55.     "Conveyance[s]" include "aircraft, train[s], road vehicle[s], vessel[s]," and "other means of transport." *Id.* at 8,027.

56.     Permissible masks include medical masks, N-95 masks, and cloth masks, and masks may be either "manufactured or homemade." *Id.* at 8,027 & n.6.

57.   The mandate allows removing one's mask for certain brief periods, such as while eating or drinking, while unconscious (but not while asleep), and while wearing an oxygen mask on an airplane. *Id.* at 8,027.

58.   It contains several exemptions, including for "[p]rivate conveyances operated solely for personal, non-commercial use," for persons with relevant disabilities, and for toddlers under two. *Id.*

59.   In addition to requiring the wearing of masks, the mandate requires "[c]onveyance operators" and "[o]perators of transportation hubs" to "use best efforts to ensure that" individuals comply with the mandate. *Id.* at 8,026.

60.   Violation of the mandate carries "criminal penalties," although the CDC has announced that it "does not intend to rely primarily on these criminal penalties" because it "anticipates widespread voluntary compliance." *Id.* at 8,030 & n.33.

61.   The mandate provides only thin reasoning in support of its requirements. It takes the position that "[a]ppropriately worn masks reduce the spread of COVID-19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID-19." *Id.* at 8,026.

62.   It further reasons that "[i]ntrastate transmission of the virus has led to—and continues to lead to—interstate and international spread of the virus." *Id.* at 8,029.

63.   In an attempt to comply with 42 C.F.R. § 70.2, which requires consideration of the adequacy of state and local measures, the mandate broadly asserts that "[a]ny state or territory without sufficient mask-wearing requirements for transportation systems within its jurisdiction has not taken adequate measures to

13

prevent the spread of COVID-19 from such state or territory to another state or territory." *Id.*

64.    As authority, the mandate relies on § 264(a), as well as 42 C.F.R. §§ 70.2, 71.31(b), and 71.32(b). *Id.* at 8,026.

65.    Regarding the notice and comment requirements of the Administrative Procedure Act (APA), the mandate asserts that it "is not a rule within the meaning of the [APA] but rather is an emergency action taken under . . . existing authority." *Id.* at 8,030.

66.    It further states, "[i]n the event that a court determines this Order qualifies as a rule under the APA, notice and comment and a delay in effective date are not required because there is good cause to dispense with prior public notice and comment." *Id.*

67.    Notably, however, the CDC began considering the mask mandate at least five months before its issuance,[4] providing the CDC with more than enough time to conduct notice and comment.

68.    On top of that, the CDC still has not allowed for public comment on the mandate almost fourteen months after its issuance.

69.    Although the CDC has not updated its mask mandate since February 1, 2021, it has announced that it will "exercis[e] its enforcement discretion" in certain

---

[4] https://www.forbes.com/sites/tommybeer/2021/01/30/cdc-order-makes-not-wearing-a-mask-on-public-transportation-a-federal-crime/?sh=3fb7125616d4.

areas.[5] For example, the "CDC is exercising its enforcement discretion to not require that people wear masks on buses or vans operated by public or private school systems, including early care and education/child care programs."[6]

70.     Of course, day care operators who do not forcibly mask toddlers while traveling on buses or vans still commit a criminal act. *Id.* at 8,030 & n.33.

Harm to Plaintiffs Caused by the Mask Mandate

71.     Plaintiffs are harmed in several ways by the CDC's unlawful mandate.

72.     First, Plaintiffs are regulated by the mandate and subject to fines for non-compliance. *See* ¶¶ 9–29. State-owned airports, for example, qualify as "[o]perators of transportation hubs" and "must use best efforts to ensure that any person entering or on the premises of the transportation hub wears a mask." 86 Fed. Reg. at 8,029; *cf. Becerra*, 544 F. Supp. 3d at 1253 ("Florida maintains a sovereign and proprietary interest in protecting" its ports because they "are political subdivisions of the state."). The same is true, for example, of public bus transportation. In each instance, Plaintiffs must expend resources to enforce the mandate. If they do not, they risk criminal and civil penalties. 86 Fed. Reg. at 8,030 & n.33.

73.     Second, the mandate harms Plaintiffs' sovereign interests. Many Plaintiffs have laws or policies prohibiting or discouraging mask requirements in contexts where the mask mandate applies. *See* ¶¶ 9, 13, 18, 21, 25, 27. Florida law,

---

[5] https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

[6] https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

for example, prohibits public schools from "[r]equir[ing] a student to wear a face mask." § 1002.20(3)(n)1.a., Fla. Stat. The mandate, however, requires Florida's public schools to do so while traveling on conveyances such as school buses. *See Florida v. Nelson*, No. 8:21-cv-2524, 2021 WL 6108948, at *9 (M.D. Fla. Dec. 22, 2021) (Merryday, J.) ("[T]he state suffers sovereign injury when unlawful agency action preempts state law." (collecting authorities)). And that harm is not eliminated merely because the CDC has announced, subject to change at any time, that it is exercising "enforcement discretion."

74.     Third, the mask mandate harms the Plaintiffs' quasi-sovereign interests in the health, safety, and welfare of their citizens. *Id.* at *6–9. Forced masking—especially for toddlers—causes a variety of negative health consequences, including psychological harms, reduced oxygenation, reduced sanitation, and delayed speech development.

75.     To prevent further harm, Plaintiffs seek relief from this Court.

## CLAIMS

## <u>COUNT 1</u>

### Agency action that is not in accordance with law and is in excess of authority, in violation of the APA

76.     Plaintiffs repeat and incorporate by reference ¶¶ 1–75.

77.     Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory . . . authority, or limitations, or short of statutory right." *See* 5 U.S.C. § 706(2)(A), (C).

78.     The mask mandate exceeds CDC's authority under § 264(a) in several ways.

79.     First, § 264(a) does not authorize economy-wide measures, only "discrete action[s]," such as "bann[ing] a discrete item," detain[ing]" a ship, or taking other similar measures "distinctly limited in time, scope, and subject matter." *Becerra*, 544 F. Supp. 3d at 1264.

80.     Second, and relatedly, § 264(a) authorizes only measures "directly relate[d] to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *Alabama Ass'n of Realtors II*, 141 S. Ct. at 2488. It does not authorize prophylactic mask requirements for individuals who show no sign of infection.

81.     Third, the mandate barely gestures at § 264(a)'s requirement that measures be designed to prevent the *interstate* spread of communicable disease. 86 Fed. Reg. at 8,029. It provides no explanation, for example, of how wearing a mask on an intracity bus trip in Gainesville prevents the interstate spread of COVID-19. Insofar as the mandate does not exceed Congress's authority under the Commerce Clause, it at a minimum fails the statute's interstate requirement. *Cf. United States v. Lopez*, 514 U.S. 549, 562–63 (1995) (discussing a lack of congressional findings regarding the effect on interstate commerce).

82.     Fourth, several interpretive canons counsel in favor of reading § 264(a) not to authorize the mandate, including the major questions doctrine, the federalism

17

canon, and the canon of constitutional avoidance. *See Alabama Ass'n of Realtors II*, 141 S. Ct. at 2489.

83. The mask mandate is contrary to law.

## COUNT 2

**Arbitrary and capricious agency action in violation of the APA**

84. Plaintiffs repeat and incorporate by reference ¶¶ 1–75.

85. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

86. The mask mandate is arbitrary and capricious for several reasons.

87. First, the mandate's rationale is paper thin. *See Motor Vehicle Mfrs. Ass'n of U.S. v State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In a conclusory fashion, the mandate asserts that "[a]ppropriately worn masks reduce the spread of COVID-19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID-19." 86 Fed. Reg. at 8,026. But the mandate does not acknowledge, much less discuss, numerous studies reaching different conclusions.[7]

---

[7] *See, e.g.*, Laetitia Canini et al., *Surgical Mask to Prevent Influenza Transmission in Households: A Cluster Randomized Trial*, PLOS ONE, Nov. 2010; Henning Bundgaard et al., *Effectiveness of Adding a Mask Recommendation to Other Public Health Measures to Prevent SARS-CoV-2 Infection in Danish Mask Wearers*, ANNALS INTERNAL MED., Nov. 2020; Chandini Raina MacIntyre et al., *Cluster Randomised Controlled Trial to Examine Medical Mask Use as Source Control for People with Respiratory Illness*, BMJ OPEN, Dec. 2016; Joshua L. Jacobs et al., *Use of Surgical Face Masks to Reduce the Incidence of the Common Cold Among Health Care Workers in Japan: a Randomized Controlled Trial*, AM. J. INFECTION CONTROL, June 2009; Benjamin J. Cowling et al., *Preliminary Findings of a Randomized Trial of Non-Pharmaceutical Interventions to Prevent Influenza Transmission in Households*, PLOS ONE, May 2008; Elaine L. Larson et al., *Impact of Non-Pharmaceutical Interventions on URIs and Influenza in Crowded*, *Urban Households*, PUBLIC HEALTH REPORTS, March-April 2010.

88.     Second, the CDC failed to consider lesser alternatives. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913–14 (2020). For example, the mandate asserts that "[i]ntrastate transmission of the virus has led to—and continues to lead to—interstate and international spread of the virus." 86 Fed. Reg. at 8,029. But it does not follow that *any* intrastate spread will lead to interstate transmission. Put differently, the CDC should have considered which types of transportation are most likely to contribute to interstate spread. Instead, the CDC treated buses transporting toddlers to day care and interstate flights as if they present the same risk of spreading COVID-19 across state lines.

89.     Similarly, the mandate fails to discuss the lesser alternative of imposing mask mandates only on older children. The mandate applies to toddlers as young as two, but the World Health Organization and the United Nations Children's Fund have said that masking at this age is affirmatively harmful. "Children aged 5 years and under should not be required to wear masks. This is based on the safety and overall interest of the child and the capacity to appropriately use a mask with minimal assistance."[8] Even for children under 12, mask use should be limited because of the "[p]otential impact of wearing a mask on learning and psychosocial development."[9]

---

[8] https://www.euro.who.int/__data/assets/pdf_file/0016/463102/Schooling-COVID19-masks.pdf.

[9] https://www.euro.who.int/__data/assets/pdf_file/0016/463102/Schooling-COVID19-masks.pdf.

90.     Third, the mandate neither explains the CDC's failure to issue a mask mandate for the first eleven months of the pandemic nor acknowledges the reliance interests created by that inaction. *See Regents*, 140 S. Ct. at 1913–14.

91.     The mask mandate is arbitrary and capricious.

## COUNT 3

**Failure to conduct notice and comment in violation of the APA**

92.     Plaintiffs repeat and incorporate by reference ¶¶ 1–75.

93.     The APA requires notice of, and comment on, agency rules that "affect individual rights and obligations." *Chrysler Corp. v. Brown*, 441 U.S. 281, 303 (1979); *see* 5 U.S.C. § 553.

94.     The mandate asserts that it "is not a rule within the meaning of the [APA] but rather is an emergency action taken under . . . existing authority." 86 Fed. Reg. at 8,030. But the mask mandate is quintessentially legislative—it creates new legal requirements with criminal consequences. Moreover, it "serves as neither a tentative recommendation nor a suggested guideline nor a declaratory 'final disposition.'" *Becerra*, 544 F. Supp. 3d at 1289.

95.     The mandate also asserts that, "[i]n the event that a court determines this Order qualifies as a rule under the APA, notice and comment and a delay in effective date are not required because there is good cause to dispense with prior public notice and comment." 86 Fed. Reg. at 8,030. But the CDC began considering its mask mandate in September of 2020, perhaps earlier. It cannot invoke the good cause

exception when it had time to conduct notice and comment and chose not to. *See Becerra*, 544 F. Supp. 3d at 1296–97.

96.     Moreover, it has been nearly fourteen months since the CDC made that good cause finding. It is one thing to invoke good cause while the agency conducts notice and comment. It is another to rely on good cause indefinitely. *Cf. Biden v. Missouri*, 142 S. Ct. 647, 654 (2022) (accepting the agency's good cause finding where it issued an interim rule while immediately commencing notice and comment).

97.     Notice and comment was required.

## COUNT 4

### Violation of 42 C.F.R. § 70.2

98.     Plaintiffs repeat and incorporate by reference ¶¶ 1–75.

99.     Under the APA, a court must "hold unlawful and set aside agency action" that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

100.     Because the CDC relied on 42 C.F.R. § 70.2, *see* 86 Fed. Reg. at 8,026, it was required to consider the adequacy of state and local measures before issuing measures itself. *See Becerra*, 544 F. Supp. 3d at 1273.

101.     Instead of doing so, the mandate broadly asserts that "[a]ny state or territory without sufficient mask-wearing requirements for transportation systems within its jurisdiction has not taken adequate measures to prevent the spread of

COVID-19 from such state or territory to another state or territory." 86 Fed. Reg. at 8,029.

102.    Section 70.2 requires more. The CDC must consider the measures that States and their subdivisions have implemented and specifically consider their adequacy to control the interstate spread of COVID-19. The mere assertion that mask mandates are the only appropriate measure is inadequate.

## COUNT 5

### Violation of the Constitution

103.    Plaintiffs repeat and incorporate by reference ¶¶ 1–75.

104.    In the event that the Court finds that § 264(a) authorizes the mask mandate, that statute would then give the CDC a general police power, in violation of the non-delegation doctrine, the Commerce Clause, and the Tenth Amendment.

## COUNT 6

### Commandeering

105.    Plaintiffs repeat and incorporate by reference ¶¶ 1–75.

106.    The mandate requires state-run conveyances and transportation hubs to affirmatively enforce the mandate, in violation of the anti-commandeering doctrine.

## COUNT 7

### Declaratory judgment that the mask mandate is ultra vires

107.    Plaintiffs repeat and incorporate by reference ¶¶ 1–75.

108.   For the reasons given in Counts 1–6, Plaintiffs are entitled to a declaratory judgment that the mask mandate is ultra vires.

**PRAYER FOR RELIEF**

For these reasons, Plaintiffs ask the Court to:

a)  Hold unlawful and set aside the mask mandate.

b)  Issue permanent injunctive relief enjoining Defendants from enforcing the mask mandate.

c)  Issue declaratory relief declaring the mask mandate unlawful.

d)  Award Plaintiffs costs and reasonable attorney's fees.

e)  Award such other relief as the Court deems equitable and just.

Respectfully submitted,

Ashley Moody
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

*/s/ James H. Percival*
James H. Percival* (FBN 1016188)
DEPUTY ATTORNEY GENERAL OF LEGAL POLICY
*Lead Counsel

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Daniel Bell (FBN 1008587)
CHIEF DEPUTY SOLICITOR GENERAL

Jason H. Hilborn (FBN 1008829)
DEPUTY SOLICITOR GENERAL

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the Plaintiffs*

Other Counsel:[10]

Steve Marshall
*Alabama Attorney General*
Edmund G. LaCour Jr.
*Solicitor General*
Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
(334) 353-2196
edmund.lacour@alabamaag.gov

Treg R. Traylor
*Attorney General of Alaska*
Charles Edmond Brasington
*Assistant Attorney General*
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
(907) 269-6612
charles.brasington@alaska.gov

Mark Brnovich
*Arizona Attorney General*
Drew C. Ensign
*Deputy Solicitor General*
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-5025
drew.ensign@azag.gov

---

[10] Counsel for Florida is appearing as counsel of record for all Plaintiffs. Listed other counsel who wish to appear in this matter will file separate motions to appear pro hac vice, with counsel for Florida serving as local counsel.

Leslie Rutledge
*Arkansas Attorney General*
Dylan L. Jacobs
*Deputy Solicitor General*
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-3661
dylan.jacobs@arkansasag.gov

Christopher M. Carr
*Attorney General of Georgia*
Stephen J. Petrany
*Solicitor General*
Georgia Department of Law
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

Lawrence G. Wasden
*Idaho Attorney General*
Dayton Reed
*Deputy Attorney General*
Office of the Idaho Attorney General
700 W. Jefferson Street
Boise, ID 83720-0010
(208) 334-2400
dayton.reed@ag.idaho.gov

Theodore E. Rokita
*Attorney General of Indiana*
Thomas M. Fisher
*Solicitor General*
Office of the Indiana Attorney General
IGC-South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204-2770
(317) 232-6255
tom.fisher@atg.in.gov

Derek Schmidt
*Attorney General of Kansas*
Shannon Grammel
*Deputy Solicitor General*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
(785) 296-2215
shannon.grammel@ag.ks.gov

Daniel Cameron
*Attorney General of Kentucky*
Marc Manley
*Associate Attorney General*
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
(502) 696-5478
marc.manley@ky.gov

Jeff Landry
*Attorney General of Louisiana*
Elizabeth B. Murrill
*Solicitor General*
Joseph S. St. John
*Deputy Solicitor General*
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

Lynn Fitch
*Attorney General of Mississippi*
John V. Coghlan
*Deputy Solicitor General*
State of Mississippi
Office of the Attorney General
550 High Street
Jackson, MS 39201
(601) 359-3680
john.coghlan@ago.ms.gov

Eric S. Schmitt
*Missouri Attorney General*
D. John Sauer
*Solicitor General*
Jeff P. Johnson
Michael E. Talent
Office of Attorney General
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8870
(573) 751-0774
jeff.johnson@ago.mo.gov

Austin Knudsen
*Attorney General*
Kristin Hansen
*Lieutenant General*
David M.S. Dewhirst
*Solicitor General*
Montana Department of Justice
215 N Sanders
Helena, MT 59601
(406) 444-2026
david.dewhirst@mt.gov

Douglas J. Peterson
*Nebraska Attorney General*
James A. Campbell
*Solicitor General*
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2682
jim.campbell@nebraska.gov

Dave Yost
*Ohio Attorney General*
Benjamin M. Flowers
*Ohio Solicitor General*
30 E. Broad St., 17th Floor
Columbus, OH 43220
(614) 466-8980
bflowers@ohioago.gov

John M. O'Connor
*Oklahoma Attorney General*
Bryan Cleveland
*Deputy Solicitor General*
Office of the Oklahoma Attorney General
313 NE 21st St.
Oklahoma City, OK 73105
(405) 521-3921
bryan.cleveland@oag.ok.gov

Alan Wilson
*Attorney General of South Carolina*
Thomas T. Hydrick
*Assistant Deputy Solicitor General*
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

Sean D. Reyes
*Utah Attorney General*
Melissa Holyoak
*Utah Solicitor General*
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
melissaholyoak@agutah.gov

Jason S. Miyares
*Attorney General of Virginia*
Andrew N. Ferguson
*Solicitor General*
Kevin M. Gallagher
*Deputy Solicitor General*
Virginia Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219
(804) 786-7704
aferguson@oag.state.va.us

Patrick Morrisey
*Attorney General of West Virginia*
Lindsay S. See
*Solicitor General*
Office of the Attorney General of West Virginia
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021
lindsay.s.see@wvago.gov